**UNITED STATES of America**

v.

**Elio C. BALDASSARI, aka Al Baldassari et al.**

**Crim. No. 14830.**

United States District Court,
M. D. Pennsylvania.

Feb. 2, 1972.

Raymond E. Makowski, U. S. Dept. of Justice, Philadelphia, Pa., for plaintiff.

William Morgan, Scranton, Pa., for Elio Baldassari.

Thomas Hanlon, Scranton, Pa., for Joseph Baldassari.

James McHale, Scranton, Pa., for Robert Baldassari.

Henry Burke, Scranton, Pa., for Michael Joulwan.

Thomas Foley, Scranton, Pa., for Leonard Bisignani.

Frank McDonnell, Scranton, Pa., for Robert Hubshman.

Herald Price Fahringer, Buffalo, N. Y., for Willie Brodsky.

John B. Beemer, Scranton, Pa., for Herb Weiner.

## MEMORANDUM

NEALON, District Judge.

Defendants have been indicted for violations of 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1952 (use of interstate telephone facilities with the intent to carry on an unlawful activity), and 18 U.S.C. § 1084 (use of a telephone for the transmission in interstate commerce of information assisting in the placing of bets or wagers on sporting events or contests), and have filed a motion to suppress, challenging the validity of the wiretap authorization under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. Numerous contentions have been raised by Defendants in support of the motion but this Memorandum will be confined to the allegations that the Government failed to comply with the requirements of Section 2516(1) of the Act, 18 U.S.C., viz.; that neither the Attorney General nor any Assistant Attorney General specially designated by him authorized the application to this Court for an order allowing the interception of wire communications on telephones listed in the names of Defendants Al Baldassari and Joe O. Baldassari.

A reading of Title III and its legislative history leaves no doubt that Congress intended to prohibit all wiretapping and electronic surveillance except by law enforcement officials investigating certain enumerated crimes and under a carefully circumscribed and strictly controlled procedure. The legislative history further states specifically that the procedure was intended to conform to the constitutional standards enunciated in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

In *Berger, supra,* the Supreme Court expressed the deepest concern toward electronic eavesdropping, describing it as, by its very nature, ". . . an intrusion of privacy that is broad in scope," and observed that ". . . [few] threats to liberty exist which are greater than that posed by the use of eavesdropping devices." *Id.* 388 U.S. at 56, 63, 87 S.Ct. at 1885. Insofar as Fourth Amendment rights were concerned, Mr. Justice Clark, speaking for the Court, suggested that ". . . a showing of exigency, in order to avoid notice would appear more important in eavesdropping, with its inherent dangers, than that required when conventional procedures of search and seizure are utilized." *Id.* at 60, 87 S.Ct. at 1884. And Mr. Justice Stewart, in his concurring opinion, stated that the affidavit submitted to the Court showing probable cause ". . . might be enough to satisfy the standards of the Fourth Amendment for

**906**

a conventional search or arrest, . . . [b]ut . . . it was constitutionally insufficient to constitute probable cause to justify an intrusion of the scope and duration that was permitted in this case." *Id.* at 70, 87 S.Ct. at 1889. Similarly in *Katz, supra,* the Court referred to ". . . the procedure of antecedent justification . . . that is central to the Fourth Amendment," and held such a procedure " . . . to be a constitutional precondition of the kind of electronic surveillance involved in this case." *Id.* 389 U.S. at 359, 88 S.Ct. at 515. Against this backdrop of judicial awareness of the awesome potential for abuse, and concern for individual privacy, Title III was debated and enacted. That it intended to establish a stringent step by step procedure leading up to ultimate judicial authorization for the use of electronic eavesdropping equipment is clear.

Section 2516(1) provides, inter alia:

"The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal Judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications. . . ."

18 U.S.C. § 2516(1).

■ Senate Report No. 1097, 1968 U. S.Code Cong. & Admin.News, p. 2185 explains the legislative purpose behind section 2516(1), as follows:

"This provision centralizes in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques. Centralization will avoid the possibility that divergent practices might develop. Should abuses occur, the lines of responsibility lead to an identifiable person. This provision in itself should go a long way toward guaranteeing that no abuses will happen."

Consequently, only the Attorney General or one of nine Assistant Attorneys General specially designated by him is empowered to authorize an application for a Court Order. To satisfy this requirement, the application to this Court filed July 20, 1970, appended a letter dated July 8, 1970, signed by Will Wilson, Assistant Attorney General, in which he stated that he had been specially designated under Section 2516 by the Attorney General of the United States, The Honorable John N. Mitchell, and, accordingly, authorized David E. Abrahamson, Special Attorney for the Philadelphia Strike Force, to make the application. We are now informed in affidavits submitted by Sol Lindenbaum, Executive Assistant to the Attorney General, and Henry E. Peterson, Deputy Assistant Attorney General in the Criminal Division, that neither the Attorney General, Mr. Mitchell, nor the Assistant Attorney General, Mr. Wilson, examined the file or expressly authorized the application. Moreover, the signature of Will Wilson on the letter of July 8, 1970, was signed by Mr. Peterson and not by Mr. Wilson.

■ By way of explanation, Mr. Lindenbaum averred that he approved the request on behalf of the Attorney General pursuant to authorization given him by the Attorney General under Title 28 U.S.C. § 510[1] and specially designated Will Wilson, on an *ad hoc* basis, to authorize David E. Abrahamson to make such application. In addition, Mr. Peterson declared that he regarded the signing of Will Wilson's name as a ministerial act because Will Wilson had authorized him to sign Wilson's name to and dispatch such a letter of authorization in every instance in which the request had been favorably acted upon in the office of the Attorney Gen-

[1]. Title 28 U.S.C. § 510 provides:
The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

eral. Similar explanations were made and rejected, in two recent cases, United States v. Robinson, 40 U.S.L.W. 2454 (5th Cir. 1972) and United States v. Cihal,. 336 F.Supp. 261 (W.D.Pa.1972). In *Robinson,* the Court of Appeals for the Fifth Circuit reasoned that . . . "[t]he legislative history of § 2516(1) as well as simple logic, compels the conclusion that § 510 must not be read as liberalizing the narrow limits Congress placed on who could initiate the wiretap process." *Id.* at 2455. Further, the Court added that " . . . by expressing its intention that only 'a publicly responsible official, subject to the political process' could initiate a wiretap application, Congress wanted to make certain that every such matter would have the *personal* attention of an individual appointed by the President and confirmed by the Senate." *Id.* I agree with this analysis. The Senate Report talks in clear, specific terms about *centralizing* the initiating procedure in *a* publicly responsible official subject to the political process to avoid the possibility that divergent practices might develop and, if such abuses occur, the lines of responsibility lead to an identifiable *person.* Any delegation of authority was provided for in the statute by allowing the Attorney General to specially designate an Assistant Attorney General who similarly would be subject to the political process. *See* 28 U.S.C. §§ 503, 506. Mindful of the constitutional problems identified by the Supreme Court, the potential breadth of electronic intrusion, the legislative history, and the clear wording of § 2516(1), it follows, as the *Robinson* opinion notes, that § 2516(1) was intended to operate as a limit upon § 510, rather than that § 510 broadened the circumscribed authority set forth in § 2516(1). Finally, § 510 authorizes the Attorney General to " . . . make such provisions as he considers appropriate" in delegating his authority but the record here contains no documentation of such provision save a general reference thereto in Mr. Lindenbaum's affidavit.

Therefore, I conclude as did the Courts in *Robinson* and *Cihal,* that the requirements of § 2516(1) were not complied with and that the evidence obtained as a result of this Court's Order of July 20, 1970, authorizing the installation of mechanical devices on telephone numbers 717–344–4573, 717–347–1572, and 717–347–1544 must be suppressed. 18 U.S.C. § 2518(10) (a).