**UNITED STATES of America,**

v.

**Robert Charles FOX, a/k/a Bob, a/k/a R. Martin, et al., Defendants.**

**Crim. No. 7088.**

United States District Court,
S. D. Illinois, S. D.

Sept. 27, 1972.

Edward G. Coleman, Springfield, Ill., for Robert Charles Fox and Victor Seppi.

Heckenkamp & Fuiten, Springfield, Ill., for Ernest B. Dinora and Richard Mattera.

J. H. Weiner, Springfield, Ill., for Dominic Greco.

Robert E. Gillespie, Springfield, Ill., for Kenneth Dunlap.

Thomas M. Vockrodt, Special Atty., Department of Justice, St. Louis, Mo., Donald B. Mackay, U. S. Atty., Springfield, Ill., for the United States.

## OPINION OF THE COURT

POOS, District Judge.

This case involves the procedure utilized by the Department of Justice in initiating an application for the interception of wire and oral communications under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C., Sec. 2510 et seq.

Various affidavits were filed by the Government setting out the general procedure utilized in initiating an application for the interception of wire and oral communications. Whenever a formal request for authorization for an interception was received, the accompanying file which included copies of the proposed affidavit, application and order were examined by a special unit of the Organized Crime and Racketeering Section of the Criminal Division. The file was then forwarded to the Deputy Chief or Chief of the Organized Crime and Racketeering Section and then on to the office of the Assistant Attorney General of the Criminal Division where it was again reviewed by a Deputy Assistant Attorney General.

The file, with the recommendation of the Criminal Division, was then forwarded to the office of the Attorney General. Sol Lindenbaum, the Executive Assistant to the Attorney General, then reviewed the file. In most instances the file, with Sol Lindenbaum's recommendation added, was then sent in to the Attorney General for his personal authorization. In some instances Sol Lindenbaum exercised the authority of the Attorney General in authorizing the application as he had been authorized by the Attorney General's policy on such requests. An affidavit has been filed by the former Attorney General of the United States, John W. Mitchell, stating that he has verbally authorized Sol Lindenbaum, his Executive Assistant, to act on his behalf on requests for authorizations for interceptions of wire and oral communications.

There were two authorizations for the interception of wire and oral communications in this case. On October 21, 1970 the Criminal Division of the Department of Justice addressed to the Attorney General a request for approval of authorization to apply for interception orders. On November 10, 1970 the Criminal Division sought authorization for an extension of the interception obtained under the first request.

On October 21, 1970, the Attorney General of the United States approved the request that authorization be given to make application for an interception order by initialing a memorandum to Will Wilson, Assistant Attorney General, Criminal Division. The file was then sent back to the Criminal Division with this memorandum authorizing him to authorize Thomas Vockrodt to submit the authorized application to this Court. A letter of authorization dated October 22, 1970 was then dispatched to the applicant, Thomas Vockrodt, over Will Wilson's signature. Mr. Wilson's signature was placed on this particular letter by Mr. Henry Petersen, Deputy Assistant Attorney General, Criminal Division. An affidavit has been filed by the former Assistant Attorney General for the Criminal Division, Will Wilson, stating that he has authorized Deputy Assistant Attorney General, Henry E. Petersen, and Deputy Assistant Attorney General, Harold Shapiro, to sign his name to letters of authorization for application of interception of wire and oral communications.

The procedure utilized for the November 10, 1972 extension authorization was substantially the same as that utilized for the original authorization of October 21, 1972. The procedures differed when the file was sent to the Office of the Attorney General. The Attorney General did not personally authorize the extension of October 11, 1972 Order. Instead Sol Lindenbaum, the Executive Assistant to the Attorney General, placed the Attorney General's initials on the request for authorization, and sent the file back to the Criminal Division with a memorandum addressed to the Assistant Attorney General, Will Wilson, authoriz-

ing him to authorize the particular trial attorney, Thomas Vockrodt to submit the authorized application to this Court. Will Wilson's signature was affixed to the authorization for an extension by Harold Shapiro, one of his Deputy Assistants.

█ The question now before this Court is whether or not the procedure utilized by the Department of Justice in initiating the application of October 21, 1970 for the interception of wire and oral communications, and the extension application of November 10, 1972 under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C., Section 2510 et seq., is within the meaning of Title 18, U.S.C., Section 2516(1).

Title 18, U.S.C., Section 2516(1) provides in pertinent part:

"The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made . . ."

In United States v. Robinson, 468 F. 2d 189 (C.A. 5), January 12, 1972, the Court read Section 2516(1) literally. In that case the Executive Assistant to the Attorney General of the United States, acting under authority delegated by the Attorney General, approved actions specially designating an Assistant Attorney General to authorize the application to a federal judge for the wiretaps in question. This proxy commission was then routinely executed by a Deputy Assistant Attorney General who subscribed the Assistant Attorney General's name on letters to the United States Attorney empowering him to file an application. The Government argued that direct action of the Attorney General or Assistant Attorney General personally was not needed in order to properly commence the authorization even though Section 2516(1) specially mentions the Attorney General or Assistant Attorney General. The Government cited 28 U.S.C., Section 510, which provides:

"The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee or agency of the Department of Justice of any function of the Attorney General",

and argued that this Section permits the Deputy Assistant Attorney General involved to authorize a request for authorization for the interception of wire and oral communications. The Court rejected this argument and stated that since Section 510 had existed when Section 2516(1) was enacted, the inclusion in the later statute of language specifying who the Attorney General could specially designate to perform the instigating function would have been surplusage if Congress meant that the Attorney General could authorize the performance of his duty by any officer, employee or agency of his Department. Section 2516(1), the Court concluded, was intended to operate as a limit upon Section 510 rather than that Section 510 broadened the circumscribed authority set out in Section 2516(1).

The Court in Robinson went on to discuss the legislative history of Section 2516(1). The intention of Congress was to have a publicly responsible official subject to the political process initiate a wiretap application. Congress wanted to make certain that every such matter would have the personal attention of an individual appointed by the President and confirmed by the Senate. Its reasoning, the Court stated, was that this narrow limitation to top department officials would (1) establish a unitary policy in the use of the awesome power conferred, and (2) require that power to be exercised with a circumspection reenforced by ready identifiability of whoev-

er was responsible for its use, thus maximizing the guarantee that abuses would not occur.

The Court stated that the action of the Attorney General's Executive Assistant in designating an Assistant Attorney General to authorize the application severely undercut the congressional scheme of Section 2516(1) and took from rather than added to the protections intended by Congress. The Court ultimately concluded that the interceptions of the wire and oral communications were improperly authorized and suppressed all evidence which emanated from these improperly authorized wiretaps.

The Court, in United States v. Aquino, 338 F.Supp. 1080 (E.D.Mich.1972) adopted the rationale of the Robinson case. The same procedure utilized in the Robinson case was also utilized in the Aquino case. However, the authorization in Aquino dealt with an extension of a properly authorized wiretap. The Court extended the Robinson rationale to the extension authorization and suppressed all evidence obtained from the wiretap after its extension date.

In United States v. Pisacano, 459 F.2d 259, C.A. 2, 1972, the Court upheld the procedure utilized by the Justice Department in authorizing an application to a federal judge for a wiretap. In the Pisacano case Sol Lindenbaum, Executive Assistant to the Attorney General of the United States, approved actions designating Will Wilson, then Assistant Attorney General in charge of the Criminal Division, to authorize a designated field official to apply to a federal judge for interception orders under 18 U.S.C., Section 2518. Henry Petersen signed Will Wilson's name which was in conformity with the standard procedure of dispatching such a letter in every case in which Will Wilson had been specially designated on an ad hoc basis to authorize the application.

The Court held that this procedure was within the meaning of 18 U.S.C., § § 2516(1), i. e., the "narrow limitation"

on authorizations by "top department officials" prescribed in Section 2516(1) did result in the establishment of "a unitary policy in the use of the awesome power conferred" in Title III. The Court further stated that the procedures used clearly conformed with the letter of Section 2516(1), particularly when this is read in light of the evidence, furnished by Section 101(a) of the Civil Rights Act of 1968, 18 U.S.C., Sec. 245(a)(1) that when Congress wished to prohibit delegation of any sort, it knew how to do it.

In United States v. Ceraso, 467 F.2d 647, C.A. 3, 1972, the Attorney General of the United States personally approved the authorization for a wiretap by initialing a memorandum to Will Wilson authorizing him to authorize a designated field official to apply to a federal judge for a wiretap. Because the Assistant Attorney General's office regarded this authorization as a ministerial act in light of the Attorney General's approval of the application, Wilson's Deputy Assistant Attorney General, Harold Shapiro, signed Wilson's name to the letter. The Court held this procedure proper in that it complied with the intent of Congress to centralize in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques. 1968 U. S.Code Cong. and Admin.News, pp. 2112, 2185. The Court stated that once the Attorney General or his designated Assistant Attorney General approves, the purposes of centralization are achieved.

The procedure utilized herein for the October 21, 1970 application for an interception of wire communications is identical to the procedure utilized in Ceraso case. Even though the Attorney General merely initialed the memorandum to Will Wilson authorizing him to authorize a field official and even though Mr. Henry Petersen placed Mr. Will Wilson's signature on this memorandum, this Court finds that this procedure is within the intent of Congress.

Once the Attorney General approved a wiretap application, the intent of centralizing in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of wiretaps was achieved. The fact that Will Wilson did not sign the memorandum is not of such a significant infirmity to find this procedure improper. The important fact is that the Attorney General of the United States, as specified in Section 2516(1), did personally approve an authorization. Admittedly, he merely authorized Will Wilson to authorize a field official to apply for a wiretap to a federal judge, but to hold this procedure improper would be to place form over substance and would negate the intent of Congress. Accordingly, this Court holds that the procedure utilized in the October 21, 1970 authorization for the interception of wire and oral communications is within the meaning of Title 18, U.S.C., Section 2516(1).

The situation in the November 10, 1970 authorization differs from that of October 21, 1970. In this instance neither the Attorney General nor an Assistant Attorney General personally authorized an application. The facts in Pisacano and Robinson are similar to those of the extension authorization of November 10, 1970. However, the court in each of these cases took a different position. This Court has carefully considered the ruling in the Pisacano case and must reject the rationale therein.

The Government argues that the Attorney General assumed full responsibility for what was done even if he did not act himself in every case. This may be true, but Section 2516(1) specifically states that the Attorney General or a specially designated Assistant Attorney General may authorize. The action of the Attorney General's Executive Assistant in designating an Assistant Attorney General to authorize the application, took from rather than added to the protections intended by Congress. The Attorney General's authority from Congress was to initiate wire tap applications, not to seek to have those terminated that he might find should never have been requested in the first instance.

■ The Government also argues that Congress did not intend to prohibit delegation in Section 2516(1). In Title 18 U.S.C., § 245(a)(1), Section 101, Pub. Law 90–284, Civil Rights Act of 1968, Congress specifically precluded delegation. The Government attempts to infer from this no delegation statute that if Congress had intended to prohibit delegation in Section 2516(1) it would have so stated. This Court cannot accept this rationale. Section 2516(1) specially mentions the Attorney General or an Assistant Attorney General specially designated by the Attorney General. Nothing is mentioned concerning delegation. If Congress wished to allow delegation, the wording of the statute definitely would have been otherwise. The Attorney General or Assistant Attorney General would not have been specifically mentioned in the statute. The words employed in Section 2516(1) meant what they said, and said what they meant. In this Court's opinion, when Congress stated in Section 2516(1) that the power to authorize applications to a federal judge was given to "the Attorney General, or any Assistant Attorney General specially designated by the Attorney General", it excluded designation of or delegation to all other persons.

■ When matters of a person's privacy are involved, the Government should be required to adhere to the dictates of Congress. The citizen's right to be left alone demands strict compliance with the letter of this legislative proviso. Here Congress specified that the Attorney General or Assistant Attorney General specially designated by the Attorney General may authorize. The fact that this procedure was not followed in extension order of November 10, 1970 renders all information obtained from this extension order inadmissible. Accordingly, all evidence obtained from this November 10, 1972 extension order must be suppressed.

Indeed this decision will burden the Attorney General who is required to give his individual attention to many affairs of great importance. Nonetheless the procedure enunciated in Section 2516(1) must be strictly followed.