**UNITED STATES of America,
Plaintiff,**

v.

**J. W. ROBINSON, Mario Escandar, et al.,
Defendants.**

**No. 70–333–Cr.**

United States District Court,
S. D. Florida,

March 23, 1973.

Robert W. Rust, U. S. Atty., Miami, Fla., John J. Robinson, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Donald I. Bierman, James Jay Hogan, Miami, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN RE: AUTHORIZATION OF WIRETAP APPLICATIONS

MEHRTENS, District Judge.

This case is before the Court following its remand by the United States Court of Appeals for the Fifth Circuit "for an expedited evidentiary hearing to determine whether the wiretap applications in this case were properly authorized under 18 U.S.C.A. § 2516(1)."[1]

Pursuant to the direction of the Court of Appeals, this Court ordered the respective parties in this case, as well as the respective parties in numerous other pending cases which also present wiretap authorization problems,[2] to attend a Pretrial Conference. At that conference the Government advised the Court that it was prepared to submit this case for decision upon the record as it stood before the *en banc* Court of Appeals with the additional introduction of an affidavit of Sol Lindenbaum, Executive Assistant to Attorney General John N. Mitchell, dated February 1, 1972, and an affidavit of Henry E. Petersen, Deputy Assistant Attorney General at the time

---

1. United States v. Robinson, 472 F.2d 973, No. 71–1058 (5th Cir., 1973) (*en banc* [hereinafter cited as *En banc* opinion].
   The statutory procedure as set out by Congress is as follows:
   The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made

   18 U.S.C. § 2516(1)

2. Also directed to attend the Conference were counsel of record in the following cases pending in this Court:

| | |
|---|---|
| United States v. Marder, et al. | No. 71–414–CR–WM |
| United States v. Winer, et al. | No. 71–447–CR–WM |
| United States v. Sklaroff, et al. | No. 71–612–CR–WM |
| United States v. Sklaroff, et al. | No. 71–613–CR–WM |
| United States v. Sklaroff, et al. | No. 71–614–CR–WM |
| United States v. Sklaroff, et al. | No. 71–711–CR–WM |

the instant wiretaps were authorized, dated February 2, 1972.[3] These two affidavits, although not technically a part of the record before the Court of Appeals during its *en banc* consideration of this matter, were contained in the Appendix to the Government's Supplemental Brief and did, in fact, form the substance of the Government's position at that time. Counsel for the defendants then advised this Court that it was not their intention to dispute the contents of these affidavits, and that since the affidavits showed an improper authorization the defendants had no need to present testimony.[4] Thereafter the case was reset for legal argument.

Having reviewed and analyzed the record and the arguments of counsel, this Court has concluded that the three[5] wiretap applications in this case were improperly authorized, resulting in the suppression of all evidence obtained directly or indirectly as a result of the wiretaps. This Court is not unmindful of the worthwhile law enforcement objectives which are thereby frustrated; however, we are a nation of laws, and if we are to continue to be so, the laws which define and limit the legitimate enterprise of Government within the scope of precious constitutional protections must be enforced with a vigor no less unrelenting than are those laws which define and limit the legitimate enterprise of individual citizens.

In concluding that the law compels the suppression of the intercepted communications and their fruits in this case, the Court makes the following factual findings:

The then-Attorney General, John N. Mitchell, played no part whatsoever in the three wiretap authorizations in the instant case. In its Supplemental Brief, the Government argued that the Attorney General was made aware of the ongoing wiretaps on the Escandar apart-

3. These affidavits are set out in the Appendix to the *en banc* opinion at 13–15 and 18–20, respectively.

4. The remaining cases were consolidated for an evidentiary hearing. This Court authorized subpoenas duces tecum for John Mitchell, former Attorney General of the United States; Sol Lindenbaum, Executive Assistant to the Attorney General; Will Wilson, former Assistant Attorney General; Henry Petersen, former Deputy Assistant Attorney General; and Harold Shapiro, Deputy Assistant Attorney General, and set those cases for evidentiary hearing on March 19, 1973.

Since the pretrial conference, the Fifth Circuit remanded the following cases for evidentiary hearing, which also were consolidated into the March 19, 1973 hearing:

| | |
|---|---|
| United States v. Sklaroff, et al. | No. 70–143–CR–WM |
| United States v. Sklaroff, et al. | No. CR 26,335 (N.D.Ga.) |
| (Consolidated on appeal with No. 70–143–CR–WM) | |
| United States v. Bowdach | No. 70–114–CR–CA |
| United States v. Laff, et al. | No. 70–450–CR–PF |

Another case pending in this Court which involves wiretap authorization issues was likewise consolidated into the March 19, 1973 evidentiary hearing:

| | |
|---|---|
| United States v. Davis, et al. | No. 72–241–CR–JE |

5. Original application to tap the home telephone of the defendant, Mario Escandar, dated May 21, 1970; Extension Application to that tap, dated June 10, 1970; and original application to tap the telephone in the lobby of Escandar's apartment building, dated June 13, 1970. Supplemental Appendix to the Brief of the Appellee, United States v. Robinson, 472 F.2d 973, No. 71–1058 (5th Cir., 1973), at 1–7, 12–19 and 24–32, respectively, [hereinafter cited as Gov't. Supp. App.]. A copy of the Appendix was appended to the Government's final memorandum filed in this Court on February 22, 1973.

ment and lobby phones and ratified them.[6] The Court finds that there was no such ratification and even had there been, it hardly would have satisfied the statutory authorization requirement.

At some unspecified time prior to the authorizations in this case, the Attorney General delegated to his Executive Assistant, Sol Lindenbaum, a general authority pursuant to 28 U.S.C. § 510[7] to authorize wiretap applications in his absence. The record is clear, however, that this delegation was not *ad hoc* but was, at best, general and unproscribed and was, at worst, formally nonexistent.

The three authorization decisions in this case were made by Sol Lindenbaum, the Executive Assistant to the Attorney General. The Court is compelled to this conclusion despite various documents in the record to the contrary, by the most recent affidavits of Lindenbaum[8] and Henry E. Petersen, then Deputy Assistant Attorney General.[9] Apart from these affidavits, the record thoroughly refutes the conclusion they compel.

In order to clarify the issue in this case, the Court is constrained to devote considerable attention to the unfortunate events which had led to the existence of the problem in the first instance. That is, until the haze was pulled from the procedures within the Justice Department by the latest affidavits, this case was permitted to proceed through this Court and the Court of Appeals upon a record made up of memoranda, letters and other Government documents which were both patently misleading and untrue.

On May 18, 1970, Sol Lindenbaum, Executive Assistant to the Attorney General, prepared and sent a memorandum[10] addressed to Will Wilson, Assistant Attorney General in charge of the Criminal Division, which states, *inter alia*:

> Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby *specially designated* to authorize Robert W. Rust to make the above-described application.[11] (emphasis added)

The memorandum bore the signed initials of the Attorney General, "J. N. M." They were signed thereon by Sol Lindenbaum.[12]

This memorandum was misleading, in that, by employing the precise language of 18 U.S.C.A. § 2516 ("specially designated"), it gave the unmistakable impression that the Attorney General had delegated the authorization decisions to Will Wilson. This memorandum was false, both because Sol Lindenbaum signed John Mitchell's initials and because Sol Lindenbaum himself had made the authorization decision.[13] On June 10, 1970,[14] and June 12, 1970,[15] substantially identical misleading and false memoranda were prepared and sent to Will Wilson.

On May 19, 1970, Henry E. Petersen, then a Deputy Assistant Attorney Gen-

---

6. Supplemental Brief for Appellee, United States v. Robinson, 472 F.2d 973, No. 71–1058 (5th Cir., 1973), at 5. A copy of this brief was appended to the Government's final memorandum filed in this Court on February 22, 1973.

7. 28 U.S.C. § 510 provides as follows:
   > The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

   For the reasons set out below, the Court has concluded that 28 U.S.C. § 510 has been superseded in wiretap matters by the Congress in 18 U.S.C. § 2516.

8. *En banc* opinion at 13.

9. *Id.* at 18.

10. *Id.* at 15.

11. *Id.* at 16.

12. *Id.* at 14–15.

13. *Id.* at 14.

14. *Id.* at 16.

15. *Id.* at 17.

eral, sent a letter [16] to Robert W. Rust, United States Attorney for the Southern District of Florida. The letter stated, *inter alia:*

> I have reviewed your request . . . and have determined that probable cause exists to believe that Mario Escandar and . . . are engaged in the commission of offenses . . . . I have further determined that there exists probable cause to believe that the above-named persons make use of the above-described telephone . . . .
>
> Accordingly, you are hereby authorized under the power specially designated to me in this proceeding by the Attorney General of the United States, the Honorable John N. Mitchell . . . to make application to a judge . . . .[17]

The letter bore the signed name of Assistant Attorney General Will Wilson. It was signed thereon by Henry E. Petersen.[18]

The letter was misleading in that, by employing the language of 18 U.S.C. § 2516 ("specially delegated [designated]") it gave the unmistakable impression that the Attorney General had delegated the authorization decision to Will Wilson. The letter was false, both because Henry E. Petersen signed Will Wilson's name and because Will Wilson did not make the requisite review of the request or statutory determination that probable cause existed. On June 10, 1970,[19] and June 12, 1970,[20] identical misleading and false letters were signed by Henry E. Petersen and forwarded to Robert W. Rust.

On May 21, 1970, Robert W. Rust, relying on the May 19, 1970 letter from Henry Petersen bearing Will Wilson's purported signature, submitted an application for an order authorizing the placement of a wiretap on the apartment telephone of Mario Escandar to the Honorable Charles B. Fulton, Chief Judge of this Court. This application stated, *inter alia:*

> 2. Pursuant to the powers conferred on him by Section 2516 of Title 18, United States Code, the Attorney General of the United States, the Honorable John N. Mitchell, has *specially designated* in this proceeding the Assistant Attorney General for the Criminal Division of the Department of Justice, *the Honorable Will Wilson, to authorize affiant to make this application* for an order authorizing the interception of wire communications. The letter of authorization signed by the Assistant Attorney General is attached to this application as Exhibit A.[21]

This application was false and misleading because none of the events set forth in the quoted passage had taken place as they were described therein. On June 10, 1970,[22] and June 13, 1970,[23] substantially identical false and misleading applications were filed with this Court, all in reliance upon letters from Henry E. Petersen bearing the purported signature of Will Wilson.

Although, at long last, the record is now clear that Sol Lindenbaum made the authorization decisions in this case, it is of more than passing significance that the Justice Department fostered a procedure which included ghost-written false and misleading memoranda and letters. This procedure was relied upon in good faith by the United States Attorney who requested and received an order from the Chief Judge of this District permitting the surreptitious surveillance of the private conversations of numerous individuals. Had the undersigned been the judge to whom these applications were made and had the falsity of any one in the chain of authorization documents

---

16. Gov't Supp. App. at 6–7.

17. *Id.*

18. *En banc* opinion at 20.

19. Gov't. Supp. App. at 18–19.

20. *Id.* at 31–32.

21. *Id.* at 1 (emphasis added).

22. *Id.* at 12.

23. *Id.* at 24.

come to the Court's attention, there would have been no wiretap in this case; any wiretap which had already begun would have been terminated; and the officials involved would have been called upon to answer to the Court. Can our citizens expect less of our courts when it is beyond rational dispute that similar false and misleading documents submitted by private individuals would be treated as nothing less than contempt of court?

■■ Having discovered, therefore, that Sol Lindenbaum as Executive Assistant to the Attorney General made the authorization decisions in this case, the Court has reached the legal conclusion that 18 U.S.C. § 2516 forbids the exercise of this function by anyone other than *the Attorney General* personally or one of *the Assistant Attorneys General* personally and then only when specially designated by *the Attorney General*. A *fortiori*, even had Sol Lindenbaum merely "specially designated" Will Wilson to make the authorization decision and had Henry E. Petersen made that decision for Will Wilson, the legal result would be no different. As 18 U.S.C. § 2516 forbids the authorization power to Sol Lindenbaum, so does it forbid to him the power to specially designate an Assistant Attorney General for that purpose. Likewise, as the statutory scheme forbids the authorization decision by the Executive Assistant to the Attorney General, so does it forbid that decision by a Deputy Assistant Attorney General.

The legal issue before the Court is a simple one. Not only does this Court hold that as a matter of law Sol Lindenbaum may not authorize a wiretap application consistently with the law as passed by Congress, but the majority of courts speaking to this issue reach this same conclusion. One must not lose sight amidst all the debate, which superficially appears to center around a contest of words, that we are dealing here with a power which has, for by far the greatest part of our history, been forbidden to government under all but the very most limited circumstances.[24] We are dealing with an awesome power which strikes directly at the heart of the right to privacy, which has been elevated in other contexts to the highest level of constitutional protection.[25] That the power legitimately exists at all is beyond the understanding of many of our great legal and constitutional minds.[26]

Nevertheless, the Supreme Court has approved, at least in principle, of wiretapping under tightly controlled conditions.[27] Congress has responded both to the need for new effective law enforcement tools and to the tacit and limited acceptance by the Supreme Court of electronic surveillance as such a tool, with Title III of the Omnibus Crime Control and Safe Streets Act of 1968.[28]

24. *See e. g.*, Lopez v. United States, 373 U.S. 427, 441, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963) (Warren, C. J., concurring). *See also* 1968 U.S.Code Cong. & Admin. News, pp. 2154–2156.

25. *See* Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) ; Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) ; Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) ; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746 (1886).

26. *See e. g.*, Berger v. New York, 388 U.S. 41, 64, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (Douglas, J., concurring) ; Schwartz, The Legitimation of Electronic Eavesdropping : The Politics of "Law and

Order," 67 Mich.L.Rev. 455 (1969) ; Spritzer, Electronic Surveillance by Leave of the Magistrate: The Case in Opposition, 118 U.Pa.Law Rev. 169 (Dec. 1969) ; Comment, The Constitutionality of Electronic Eavesdropping, 18 S.C.L.Rev. 835 (1966).

27. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ; Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) ; Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966).

28. 18 U.S.C. §§ 2510–2520. This Court has held Title III constitutional on its face in this case, sub nom, United States v. Escandar, 319 F.Supp. 295 (S.D.Fla. 1970). *See also* United States v. Sklaroff,

Title III forbids the interception of electronic communications and provides severe penalties for those who violate the prohibition.[29] Only as an exception in its most narrow sense has Congress provided in Title III for the interception of wire and oral communications as a tool in the investigation of certain offenses for which the need for such interception is particularly acute.[30] The Supreme Court has made it explicit that Title III is to be strictly construed in favor of the rights of the individual.[31]

■ In 18 U.S.C. § 2516, as well as throughout Title III, Congress has drafted the wiretap law clearly and unambiguously.[32] The words of Section 2516 are themselves plain and definite. Unless we are to disregard entirely long-standing canons of construction which have heretofore been given a high place in our judicial thinking,[33] the words of this statute must be applied as they read.

■ One of the several positions which the Government has taken in its briefs and arguments with respect to the legality of authorization by anyone other than the Attorney General or one of his specially designated Assistant Attorneys General is that the delegation is permitted under the general delegation statute, 28 U.S.C. § 510. This position is foreclosed by the panel decision of the Court of Appeals [34] which considered the argument and concluded that since § 510 was already in existence when § 2516 was enacted, the inclusion of specific language in the latter "would have been surplusage if Congress meant that the Attorney General could authorize the performance of this duty by any officer, employee or agency of his department," [35] as § 510 permits. This is in accord with the established principle that Congress is presumed to know its own laws,[36] and, therefore, is presumptively charged with awareness of the general delegation provision of § 510 at the time § 2516 was enacted.

■ The Court also finds unpersuasive the Government's argument that the same Congress which enacted 18 U.S.C. A. § 2516 also enacted 18 U.S.C.A. § 245(a)(1) which expressly forbids subdelegation of the authority to institute prosecution under the Civil Rights Act of 1968. The Government reasons that had the same Congress intended to forbid delegation beyond the express terms of the statute, it would have said so in unequivocal terms. This argument must fail, because from the language of § 2516, "the Attorney General, or any Assistant Attorney General specially designated by the Attorney General," it is absolutely clear how far Congress intended that the Attorney General's power of subdelegation in wiretap authorizations should extend. It is a long-recognized rule of statutory construction that the enumeration of specific items implies the exclusion of all others, *expressio un-*

---

323 F.Supp. 296 (S.D.Fla.1971) (orders on pretrial motions). The original appeal in the instant case was intended to raise the issue of the constitutionality of Title III in the Court of Appeals, but subsequent disclosure of discrepancies in the Justice Department's authorization procedures altered the posture of the case. *See* United States v. Robinson, 468 F.2d 189, 190 (5th Cir. 1972).

29. 18 U.S.C. § 2510.

30. 1968 U.S.Code Cong. & Admin.News, p. 2112 (S.Rept. No. 1097, 90th Cong. 2d Sess.) ; *See also* United States v. Eastman, 465 F.2d 1057 (3rd Cir. 1972).

31. Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

32. United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972), aff'd sub nom. United States v. Giordano, 469 F.2d 522 (4th Cir. 1972).

33. United States v. Oregon, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961) ; Addison v. Holly Hill Fruit Products, 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944) ; Lewis v. United States, 92 U.S. 618, 23 L.Ed. 513 (1876).

34. United States v. Robinson, 468 F.2d 189 (5th Cir. 1972) (panel opinion).

35. *Id.* at 192.

36. United States v. Hawkins, 228 F.2d 517, 519, 16 Alaska 36 (9th Cir. 1955).

*ius est exclusio alterius.* The Government, itself, quotes with approval from Professor Davis that "differences in statutory language are haphazard and unplanned." [37] Congress certainly could have added the phrase, "which authorization power may not be further delegated", to § 2516, which would likely have satisfied the Government's contentions; but in the Court's opinion, any such additional language would have been redundant.

■ As for the "alter-ego" theory, most heavily relied upon by the Government, the Court is simply unable to rationalize the Government's position that Lindenbaum was acting as Mitchell's "alter-ego" within the expressed intent of Congress that the authorization function be centralized "in a publicly responsible official subject to the political process." [38] Nor is the Court persuaded that Congress would be satisfied with fixed responsibility in the Attorney General, regardless of who in the Department of Justice made the authorization decision. [39]

The most recent decision reaching the "responsibility" issue was handed down by the Ninth Circuit United States Court of Appeals in United States v. Chavez. [40] In *Chavez*, two separate authorization questions were presented. The first of these is nearly identical with that faced in the instant case, *i. e.*, a memorandum to Wilson bearing Mitchell's purported initials but in fact signed by Lindenbaum, and a letter to the United States Attorney bearing Wilson's purported signature, but in fact signed thereon by Harold Shapiro. Harold Shapiro, like Henry Petersen in the instant case, was not an Assistant Attorney General but was a *Deputy* Assistant Attorney General. With respect to this authorization, [41] the Ninth Circuit held that 18 U.S.C. § 2516 required the Attorney General or one of his nine specially designated Assistant Attorneys General, and, therefore, the authorization by Sol Lindenbaum did not suffice. [42]

The second authorization problem in *Chavez* involved a second tap, which had been placed on the telephone of one of the other defendants in the case. This second tap had been personally authorized by former Attorney General Mitchell; [43] however, both the application made by the United States Attorney to the United States District Court for the wiretap order, and the order itself, contained identical recitals about Will Wilson having made the discretionary decision to authorize the tap as had the application for the Fernandez tap. Thus, the Ninth Circuit was faced squarely with the question of whether misidentification of the authorizing official constituted a violaton of 18 U.S.C. § 2516 and/or 18 U.S.C. § 2518. In specifically rejecting the Government's argument that Congressional intent was merely to fix the lines of responsibility and that the lines of responsibility led to the Attorney General regardless of who actually authorized the wiretap application, the Ninth Circuit held that although Section 2516 was complied with by the Attorney General's personal approval of the second tap, there was no compliance with Sections 2518(1)(a) and 2518(4)(d), which require that the application and the order each identify the authorizing official. What Congress intended to eliminate in formulating the

37. Davis, Administrative Law Treatise, § 9.07 (1958 ed.).

38. 1968 U.S.Code Cong. & Admin.News, p. 2185 (S.Rept. No. 1097, 90th Cong., 2d Sess.).

39. United States v. Chavez, 478 F.2d 512, No. 72–2240 (9th Cir., 1973) (Memorandum Opinion).

40. *Id.*

41. *Id.* at 2 (referred to as the "Fernandez" tap).

42. *Id.* *See also* United States v. King, 478 F.2d 494 (9th Cir., 1973).

43. This was evidenced by an after-the-fact affidavit from Mr. Mitchell submitted to the Court, which is reproduced in the Ninth Circuit's opinion at 4.

wiretap authorization process was the "button, button, who's got the button guessing game that is characteristic of the institutional decision." [44] That is exactly what the Government's position has fostered in this and the other cases involving authorization issues.

Moreover, as the Fourth Circuit has held,[45] it cannot be readily assumed that future Attorneys General would be so willing to accept this *alter ego* responsibility:

> The [future] Attorney General would always be able to say with the benefit of hindsight that the subordinate had betrayed his confidence, acted beyond the scope of his responsibility, and the actions taken were not those of an agent.[46]

The Ninth Circuit cited *Giordano* with approval in *Chavez*.

■ Both the Ninth and Fourth Circuits have now joined the panel of the Fifth Circuit in concluding that the authorization procedures followed in this case do not comply with the mandate of Congress, and that the conversations intercepted from the illegally authorized wiretaps must be suppressed. The well-reasoned opinions of these three courts compel this Court to conclude that the Government's contention of "substantial compliance" with the Title III language adopted by the Second Circuit in United States v. Pisacano [47] does not comport with the law as Congress intended it, nor as it ought to be applied and interpreted. As Judge Clark pointed out in his dissent from the Fifth Circuit's remand in this case,

> [a]n order unknowingly based upon an improperly authorized application is at least as unlawful as and certainly more harmful to the privacy rights of a citizen than a subsequent interception which encroaches upon the time, place or content limits set by an otherwise proper order.[48]

Thus, this Court finds as a matter of law that the authorizations for wiretap applications in this case were improperly authorized and that, therefore, the orders and wiretaps which eventuated therefrom did not comply with the stringent requirements of Title III.

The remedy that must be applied in this case is suppression of the intercepted conversations and their fruits, which is in accord with the panel opinion [49] as well as with every other decision which has reached the legal conclusion that a wiretap has been unauthorized or improperly "authorized." [50] Clearly, suppression is the statutory remedy.[51]

Upon consideration of the foregoing, the evidence used to convict the defendants, which has been conceded to have come from these improperly authorized wiretaps, is hereby suppressed.

44. *Id.* at 9.

45. *Giordano, supra.*

46. *Id.* 469 F.2d at 528–529.

47. 459 F.2d 259 (2d Cir. 1972).

48. *En banc* opinion at 13.

49. 468 F.2d at 194.

50. United States v. Chavez, 478 F.2d 512, No. 72–2240 (9th Cir., 1973); United States v. Giordano, 469 F.2d 522 (4th Cir. 1972); United States v. Brown, 351 F.Supp. 38 (W.D.N.C.1972); United States v. Fox, 349 F.Supp. 1258 (S.D.Ill. 1972); United States v. Vasquez, 348 F.Supp. 532 (C.D.Calif.1972); United States v. Boone, 348 F.Supp. 168 (E.D. Va.1972); United States v. Narducci, 341 F.Supp. 1107 (E.D.Pa.1972); United States v. Casale, 341 F.Supp. 374 (M.D. Pa.1972); United States v. Lagorga, 340 F.Supp. 1397 (W.D.Pa.1972); United States v. Aquino, 338 F.Supp. 1080 (E.D.Mich.1972) (extension only); United States v. Baldassari, 338 F.Supp. 904 (M.D.Pa.1972); United States v. Cihal, 336 F.Supp. 261 (W.D.Pa.1972); United States v. Bassoline, CR 46323 (E.D.Mich.1972); United States v. Smith, No. CR 852 (N.D.Ill. March 7, 1972).

51. United States v. Eastman, 465 F.2d 1057 (3d Cir. 1972).