**Charles QUINTINA et al.**

**v.**

**UNITED STATES of America and William E. Williams, District Director of Internal Revenue, Boston, Massachusetts.**

**Civ. A. Nos. 73–731–C to 73–736–C.**

United States District Court,
D. Massachusetts.

May 21, 1973.

Avram G. Hammer, Boston, Mass., for plaintiff.

Richard A. Scully, Trial Atty., Tax Div. Dept. of Justice, Wash., DC; James M. Gabriel, U. S. Atty., Boston, for defendants.

Before CAMPBELL, Circuit Judge, and CAFFREY and FREEDMAN, District Judges.

### MEMORANDUM

CAFFREY, C. J.

Six separate civil actions were filed in this court on March 7, 1973 by six individuals. The six cases all name the United States of America and William E. Williams, District Director of Internal Revenue at Boston, as parties defendant. All were filed by the same attorney and the six complaints are essentially the same, differing *inter se* chiefly as to the name of the plaintiff. Jurisdiction of this court is alleged on the basis of 28 U.S.C.A. § 1331, 28 U.S.C.A. § 1340, 28 U.S.C.A. § 1346(a)(1) and 28 U.S.C.A. § 1356.

A statutory three-judge district court was sought in each case and was convened, pursuant to 28 U.S.C.A. § 2282. Plaintiff, in each case, seeks temporary and permanent injunctive relief against the enforcement and collection pursuant to 26 U.S.C.A. § 6331 of jeopardy assessments of taxes made pursuant to 26 U.S.C.A. § 6862. It is conceded that the assessments were made, that notices of liens were filed at the appropriate Registries of Deeds, and it is further conceded that the Internal Revenue Service will, on May 23, 1973, auction off a business building owned by plaintiff Louis Colangelo (C.A. No. 73–733–C), unless enjoined by order of this court.

This court judicially notices that on September 12, 1972 each of the six plaintiffs, as well as 75 other individuals, was indicted by a federal grand jury for the District of Massachusetts. The indictment alleges that each of the plaintiffs was engaging in an illegal gambling business in violation of 18 U.S.C.A. § 1955 and 18 U.S.C.A. § 2. All six pleaded not guilty to the crimes charged.

Motions to suppress are presently pending in all of the criminal cases. These motions challenge the legality of court-authorized wire taps which produced evidence which concededly is the heart of the criminal cases, and which evidence is also the basis of the jeopardy assessments which underlie the instant six cases.

Assessments of $371,424.15 have been made against plaintiffs DiMuro, DeAngelis, Simmons, Rizzo and Quintina. Assessments of $61,797.63 have been made against plaintiff Colangelo. The assessments are for taxes of 10 per cent on wagers imposed by 26 U.S.C.A. § 4401 for gambling activities alleged to have been conducted between December 1, 1970 and November 30, 1971.

The plaintiffs contend that they, in effect, are being whip-sawed out of their Fifth Amendment rights against self-incrimination, as well as being forced to waive certain Fourth Amendment rights to be protected from unreasonable searches and seizures by the filing of the jeopardy assessments and, more particularly, by the attempted forced collection of the taxes so assessed prior to a determination of the legality of the electronic surveillance conducted by the Federal Bureau of Investigation.

On February 6, 1973, during the pendency of the criminal proceedings, the District Director delivered notices to the plaintiffs of the jeopardy assessments under 26 U.S.C.A. § 6862 of taxes, including an excise tax of 10 per cent on wagers imposed by 26 U.S.C.A. § 4401, and a $50. annual occupational tax imposed by 26 U.S.C.A. § 4411. Simultaneously with the delivery of said notices, the District Director acting under the provisions of 26 U.S.C.A. § 6331 levied upon the real and personal property of the plaintiffs in order to satisfy the foregoing taxes and additions.

During the period July 14 through 26, 1971, and August 14 through 27, 1971, agents of the FBI conducted daily interceptions of wire communications of the plaintiffs. Information obtained by the FBI as a result of or allegedly as fruits of such interceptions was disclosed by the FBI to agents of the IRS, and was utilized by the IRS as the basis for mak-

ing a projection of the taxes assessed to the plaintiffs.

On July 12, 1971, application was filed in the District Court by Special U. S. Attorney Albert F. Cullen, Jr. for leave to conduct electronic surveillance at the premises at 269–271 American Legion Highway, Revere, Massachusetts, in connection with an investigation of an illegal gambling business allegedly being conducted by the plaintiffs, Rizzo, Colangelo, DiMuro and others (E.B.D. No. 71–130). On August 13, 1971, Special Attorney Cullen filed application for leave to conduct electronic surveillance at 191 Revere Street, Revere, Massachusetts (E.B.D. No. 71–159).

The applications for these wire taps appeared in 1971 to be made pursuant to the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2510 et seq., and the applications were allowed by a District Judge.

The applications for these wire taps were accompanied by letters of authorization purporting to be signed by Mr. Will Wilson, Assistant Attorney General, dated respectively July 9, 1971 and August 12, 1971. This court now has before it an affidavit signed by Mr. Harold P. Shapiro who as at the time of the applications a Deputy Assistant· Attorney General in the Criminal Division of the U. S. Department of Justice. Mr. Shapiro states that after examining the request for authorization, according to his practice, he forwarded the applications to the Office of the Attorney General with a detailed recommendation and, following approval of the Office of the Attorney General, the Criminal Division sent letters to Mr. Cullen advising him that he was authorized to present each application to a judge of competent jurisdiction. Furthermore, Mr. Shapiro avers that the letters of authorization were not signed by Mr. Wilson, but rather, were signed by Mr. Shapiro using Mr. Wilson's name. According to Mr. Shapiro, Mr. Wilson did not examine the files or expressly authorize the applications.

The court also has before it the affidavit of Saul Lindenbaum, who occupied the position of Executive Assistant to the Attorney General of the United States, and who states in his affidavit that Attorney General John N. Mitchell refrained from designating any Assistant Attorney General to authorize without his approval the making of an application for an order permitting the interception of wire or oral communications under 18 U.S.C.A. § 2516(1). According to Mr. Lindenbaum, Attorney General Mitchell required all requests for such authorization to be referred to him for consideration. Mr. Lindenbaum further swears that the request for authorization for the wire taps which were conducted in this case were sent to the Attorney General from the Criminal Division of the Department of Justice, that Mr. Lindenbaum reviewed the submitted material, concluded that the request satisfied the requirements of the statute and that the Attorney General would have approved the request for authorization if said request had been submitted to him. Since the Attorney General was not available at the time of the respective requests for authorization, Mr. Lindenbaum approved the requests pursuant to the authorization which the Attorney General had given him, and he caused Mr. Mitchell's initials to be placed on the memorandum to Mr. Wilson.

In the Criminal cases the District Court has on the basis of a stipulation by the United States and the defendants postponed ruling on the motion to suppress until after the Supreme Court rules in United States v. Giordano, cert. granted 411 U.S. 905, 93 S.Ct. 1530, 36 L.Ed.2d 194 (1973), a case in which the Supreme Court will consider whether the procedures followed within the Department of Justice in authorizing applications for wire tap orders were sufficient to comply with Title III of the 1968 Crime Control Act.

Title 18, United States Code, § 2518 (4)(d) requires that

"Each order authorizing or approving the interception of any wire or oral

communication shall specify—the identity of the agency authorized to intercept the communications, and of the person authorizing the application."

The applications submitted in support of the order authorizing the interception of wire communications in this case stated in part that

"Pursuant to the powers conferred on him by Section 2516 of Title 18 U.S.C., the Attorney General of the United States, the Honorable John N. Mitchell, has specifically designated the Assistant Attorney General for the Criminal Division, the Honorable Will Wilson, to authorize affiant to make due application for an order authorizing the interceptions of wire communications."

Attached to the application was the letter of authorization purportedly signed by Assistant Attorney General Wilson.

To this date a number of federal courts have ruled on the question of the legality of the procedures used in the Justice Department for the authorization of wire taps. In those cases where the specific procedure involved in this action was used, the courts have almost uniformly ruled that this procedure did not meet the requirements of Section 2516 (1). United States v. Giordano, 469 F. 2d 522 (4 Cir. 1972) aff'g United States v. Focarile, 340 F.Supp. 1033 (D.Md.); United States v. Robinson, 468 F.2d 189 (5 Cir. 1972)*; United States v. Brown, 351 F.Supp. 38 (W.D.N.C.1972); United States v. Vasquez, 348 F.Supp. 532 (C.D. Calif.1972); United States v. Boone, 348 F.Supp. 168 (E.D.Va.1972); United States v. Narducci, 341 F.Supp. 1107 (E. D.Pa.1972); United States v. Aquino, 338 F.Supp. 1080 (E.D.Mich.1972); United States v. Baldassari, 338 F.Supp. 904 (M.D.Pa.1972); United States v. Cihal, 336 F.Supp. 261 (W.D.Pa.1972); United States v. Wierzbichi, (E.D.

Mich.1972); United States v. Mantello (D.D.C.1972); United States v. Smith (Cr. 71–852 4–7–72 N.D.Ill.1972); Accord, United States v. Fox, 349 F. Supp. 1258 (S.D.Ill.1972); Contra, United States v. Pisacano, 459 F.2d 259 (2 Cir. 1972). But see United States v. Becker, 461 F.2d 230, 235–236 (2 Cir. 1972); United States v. Consiglio, 342 F.Supp. 556, 559 (D.Conn.1972).

Plaintiffs concede herein that the jeopardy assessment statute, per se and standing alone, is a constitutional tax law. They likewise do not challenge the constitutionality of 18 U.S.C.A. § 1955, the section on which the indictments are based. Plaintiffs do not contend herein that the anti-injunction provisions of 26 · U.S.C.A. § 7421 are unconstitutional per se or standing alone.

What plaintiffs do say is that the combination of the two separate proceedings, i. e., indictment plus the active attempts to collect the jeopardy assessments, amounts to a denial of due process because they cannot actively defend the civil action to collect the tax without surrendering in the criminal case rights secured by the Fourth, Fifth, and possibly Sixth, Amendments, which rights they elect not to surrender.

In view of the almost unanimous rulings by every court which has had the same facts as those apparently involved in these cases, we believe that the chances of the Government's prevailing before the Supreme Court are highly speculative at best. This court does not presume to anticipate the Supreme Court, but it cannot close its eyes to the number of rulings already made adversely to the Government. We likewise cannot ignore the fact that the harm to Colangelo, if he loses his building by the sale thereof, is irreparable, whereas the harm to the Government if the sale is delayed until

---

* United States v. Robinson, 468 F.2d 189 (5 Cir. 1972) reh. en banc United States v. Robinson, 472 F.2d 973 (1973), ordering expedited evidentiary of question of legality of authorization. William O. Mehrtens ruled that authorization procedure was illegal and ordered the evidence suppressed. Robinson v. United States, 359 F.Supp. 52 (S.D.Fla.1973).

after the Supreme Court ruling is minimal. The Government's interest is fully protected by the recorded liens. There is no suggestion that the real estate will be less valuable a year from today than it is now.

For these reasons, and limiting this ruling solely to the peculiar, indeed if not bizarre, situation presented by the record before us, we order that no real estate of any of the plaintiffs herein be sold prior to a Supreme Court decision as to the legality of the conduct of Attorney General Mitchell and his subordinates.