**UNITED STATES of America, Plaintiff,**

v.

**John Clarence BROWN et al., Defendants.**

**No. C–CR–72–18.**

United States District Court, W. D. North Carolina, Charlotte Division.

Nov. 16, 1972.

David B. Sentelle, Asst. U. S. Atty., Charlotte, N. C., for the United States.

W. M. Nicholson, Charlotte, N. C., for Jacob Walter Thomas and James Watson Barr, Jr.

Lamar Gudger, Asheville, N. C., for Jack Ollary.

James E. Walker, Charlotte, N. C., for Bascom Vernon Belk, Sr. and Bascom Vernon Belk, Jr.

## ORDER

McMILLAN, District Judge.

The defendants, accused of unlawful use of interstate telephones in gambling activities (betting on ball games) in violation of Federal statutes, moved, just before their cases were called for trial on November 8, 1972, to suppress evidence that had been obtained by wiretapping under the 1968 "Omnibus Crime Control Act". Although such a motion had previously been presented to and denied by another judge, it was considered anew because of new grounds alleged in support of the motion, and because of the highly pertinent intervening decision of the Fourth Circuit Court of Appeals in United States v. Giordano et al., 469 F.2d 522 (4th Circuit, 1972).

Concluding, in light of the legislative history so well outlined by Judge Sobeloff in *Giordano*, that the Attorney General has not followed the strict procedures specified by Congress, and that the method followed in this case reduces the serious and sensitive matter of authorizing secret wiretaps from the important high-level function contemplated by Congress to the level of "ministerial" routine, I hold the wiretap evidence to have been illegally obtained; the motions to suppress are allowed.

Justification for secret eavesdropping on private telephone conversations de-

pends upon 18 U.S.C. § 2516 et seq. Section 2516 reads:

Authorization for interception of wire or oral communications.

"(1) The Attorney General, or any Assistant Attorney General *specially designated* by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of. . . ."

■ Legislative history of the statute as set out in the *Giordano* opinion demonstrates beyond doubt that Congress intended that wiretapping—that extraordinary invasion of the Fourth Amendment right against unreasonable searches and seizures—should be treated by the Justice Department as a serious business; that it should be done only after specific and detailed facts were found; and that all such authorizations be made only by the Attorney General or any *"Assistant Attorney General specially designated by the Attorney General"*

The United States contends that the tap in this case was authorized by the Attorney General himself; and they point to a typed memorandum to Will Wilson, Assistant Attorney General, dated July 6, 1971, bearing the Attorney General's initials above it, as proof of this authorization. The memorandum reads:

"This is with regard to your recommendation that authorization be given to Keith S. Snyder, United States Attorney, Western District of North Carolina, to make application for an Order of the Court under Title 18, United States Code, Section 2518, permitting the interception of wire communications for a fifteen (15) day period to and from telephone numbers 704–366–7823, 704–366–7824 and 704–366–7829, located at 6500 Park Road, Charlotte, North Carolina, in connection with the investigation into possible violations of Title 18, United States Code, Sections 1084, 1952 and 371 by Louyn E. Summerford, Lee Pressley Snider, Jr., and others as yet unknown.

"Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to exercise those powers for the purpose of authorizing Keith S. Snyder to make the above-described application."

Taking the memorandum at face value, *it is not an authorization by the Attorney General to a United States District Attorney or anyone else to apply to a court for a wiretapping order.* At the most, it approves Will Wilson's recommendation and constitutes Wilson an Assistant Attorney General "specially designated to exercise" the Attorney General's power to authorize the District Attorney to apply for the wiretap.

Since the Attorney General did not himself authorize the application, the question next arises whether Assistant Attorney General Will Wilson did in fact authorize the District Attorney to request the court to order a wiretap.

The answer is, NO.

Under date of July 6, 1971, a letter, purportedly signed "Will Wilson, Assistant Attorney General", was sent to Keith Snyder, United States District Attorney for the Western District of North Carolina, purporting to authorize this wiretap. Relying on this letter, Mr. Snyder made affidavit and sought and obtained an order from Judge Woodrow Jones authorizing this requested eavesdropping. The application informed Judge Jones that this wiretap authorization had been signed by Will Wilson, Assistant Attorney General of the United States.

Unknown to Mr. Snyder or to Judge Jones, this affidavit was false.

Will Wilson had not authorized the wiretap.

Will Wilson had not even examined the file!

Will Wilson had turned over to two *Deputy* Assistant Attorneys General, including Harold Shapiro, the matter of signing Wilson's name to such letters.

Harold Shapiro, *not* one of those empowered by the statute to authorize wiretapping, was in fact the one who signed Wilson's name.

Shapiro regarded this way of handling the case as "standard procedure", and the signing of Wilson's name to this "authorization" as a "ministerial act".

Clearly, this authorization for the wiretap was not made by "an Assistant Attorney General."

■ A final fatal flaw in this procedure is its routine misrepresentation to the United States Courts. 18 U.S.C. § 2518 requires that this application and affidavit reveal the identity of the "officer authorizing the application". The purpose of this was to keep these decisions personal to the Attorney General and a few Assistant Attorneys General, and to enable the court in case of challenge to identify instantly the official who authorized the particular application. These purposes are frustrated and the statutory protection is defeated when the application to the court, identifying the individual authorizing the application, is, unknown to the District Attorney and in flagrant violation of the statute, routinely false. There is no reason to believe Judge Jones would have ordered the wiretap if this truth had been made known to him.

■ Rights guaranteed by the constitution—including rights of those accused of handling wagers on ball games —are too fundamental to be eradicated by "ministerial act", or by misrepresentation to the courts. Wiretapping, of dubious constitutionality at best, should be sanctioned if at all only under the strictest view of the strict procedures laid down by a careful Congress.

As the Fifth Circuit Court of Appeals said in United States v. Robinson, 468 F.2d 189.

"The citizen's right to be left alone demands . . . strict compliance with the letter of this legislative proviso.

. . . . . . .

"Our decision is reached with full recognition that the statute burdens the Attorney General, who is required to give his individual attention to many affairs of great importance. However, if the load on this officer is to be lessened, such relief must come from the Congress."

The concluding paragraphs of Judge Sobeloff's opinion in *Giordano* bear repeating here:

"The defects in this case, however, go to the very heart of Title III. The statute imposes an overall ban on electronic surveillance except under certain circumstances pursuant to specific procedures—which are not mere technical steps along the way. Section 2515 of 18 U.S.C. then declares unequivocally:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial * * * before any court * * * *if the disclosure of that information would be in violation of this chapter.* (Emphasis added.)

"The means to implement the sanction created by section 2515 is then provided by 18 U.S.C. § 2518(10)(a), which directs that a motion to suppress shall be granted whenever 1) the communication was unlawfully intercepted; 2) the order of authorization or approval under which it was intercepted is insufficient on its face; or 3) the interception was not made in conformity with the order of authorization or approval. If the order had failed to identify the person who authorized the application, it would have been insufficient on its face, requiring suppression of the evidence. Here, however, there was no authorization

**42**

at all, which is the equivalent of failing to identify anyone. Furthermore, the pattern of the Government's behavior in ignoring statutory requirement after statutory requirement necessarily leads to our determination that any communications derived from the wiretap were unlawfully intercepted and therefore properly suppressed.

"It is appropriate here to recall Justice Brandeis' famous admonition given nearly forty-five years ago in Olmstead v. United States, 277 U.S. 438, 485, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (dissenting), that when "government becomes a lawbreaker, it breeds contempt for the law." Similarly, when government consistently tramples upon those parts of the law that do not suit its momentary purpose and seeks to justify its conduct by sophistic argumentation, neither respect for the law nor societal order is promoted. Accordingly, we affirm the order of the District Court suppressing the fruit of the wiretaps in these cases."

### ORDER

For reasons stated, the motion to suppress the evidence obtained by wiretapping is allowed.