### UNITED STATES of America, Plaintiff,
### v.
### Hershie LAFF et al., Defendants.
### No. 70–450–CR–PF.

United States District Court, S. D. Florida.
May 31, 1973.

---

738

Gary L. Betz, Sp. Atty., Dept. of Justice, Miami, Fla., for the U. S.

Max Lurie, Miami, Fla., for Hershie Laff.

E. David Rosen, Miami, Fla., for Fred Romash and Murray Yunes.

Sidney A. Stoltz, Miami, Fla., for Alberto & Madeline Ardura.

Louis Vernell, Miami Beach, Fla., for Nicholas H. Nardone.

Nicholas J. Capuano, Miami, Fla., for Helen Crabtree.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN RE: AUTHORIZATION OF ELECTRONIC INTERCEPTION APPLICATIONS

MEHRTENS, District Judge.

This cause was remanded by the United States Court of Appeals for the Fifth Circuit "for an expedited evidentiary hearing to determine whether the wiretap applications in this case were properly authorized under 18 U.S.C.A. §§ 2510–21." United States v. Crabtree, et al., 475 F.2d 755, (5th Cir. 1973). On March 15, 1973 this cause was transferred to the undersigned by the Honorable Peter T. Fay, one of the Judges of this Court, before whom the cause was pending, in order that this cause be consolidated with some ten other cases either remanded to or pending in this Court involving similar wiretap authorization issues. At a consolidated evidentiary hearing held on March 19–20, 1973, the Court heard the testimony of John N. Mitchell, former Attorney General of the United States; Will Wilson, former Assistant Attorney General in charge of the Criminal Division of the Department of Justice; Henry E. Petersen, now Assistant Attorney General in charge of the Criminal Division and at all times relevant to these cases a Deputy Assistant Attorney General in the Criminal Division; Sol Lindenbaum, Executive Assistant to the Attorney General; and Harold Shapiro, then and currently a Deputy Assistant Attorney General in the Criminal Division. Numerous exhibits were received in evidence. Argument was heard and all counsel were given leave to file supplementary memoranda of law. The Court, having reviewed the court files, the record of the evidentiary hearing and all memoranda submitted, makes the following findings of fact and conclusions of law.

The evidence in this case results from a Wire Interception Order signed on De-

cember 1, 1969 by the Honorable Ted Cabot, late of this Court, and from an extension order signed by Judge Cabot on December 11, 1969. The documents presented to Judge Cabot on each of those occasions included a sworn application by Gary Betz of the Miami Strike Force, the Government's attorney in the field, an affidavit by the investigating agent, a proposed interception or extension order and a letter purporting to be from Will Wilson which recited Wilson's special designation by the Attorney General to authorize the Betz application. In each instance the letter bore the written signature of Will Wilson but the writing was done by Henry Petersen. (Gov't Exs. 12, 13; Tr. 146–147) Except for the names of defendants, the dates and the telephone numbers involved, the documents submitted to Judge Cabot on December 1 and 11, 1969 were identical with those submitted to the undersigned on June 17, 1969, when this Court signed an interception order which authorized the surveillance of the telephone conversations of the defendants in the Sklaroff cases.[1] The documents and the apparent procedures followed by the officials of the Department of Justice in the authorization of the application for the wiretap order and extension in the instant case are sufficiently identical with those found by this Court in *Sklaroff* to require a like result, namely, suppression of the evidence obtained in violation of 18 U.S.C. § 2518(1)(a) and (4)(d).[2]

There is no doubt that Judge Cabot was deceived by the "specially designated" language that was deliberately included in the interrelated documents upon which his orders were based. Each of the orders prepared by the Justice Department for his signature and signed by Judge Cabot recites the autho-

rization by Wilson to Betz via a special designation by Mitchell to Wilson pursuant to the provisions of 18 U.S.C. § 2516. There is no doubt that had Judge Cabot known that Wilson was in fact *never* specially designated by Mitchell to exercise the Attorney General's powers under § 2516, he would not have signed either order.

The fact that the Government now produces two memoranda styled "Interception Order Authorizations", Government's Exhibits 3 and 4, which bear Mitchell's initials, does not alter the situation. Mitchell testified that he personally initialled Government's Exhibit 3, and that his Executive Assistant, Sol Lindenbaum, apparently placed the Attorney General's initials on Government's Exhibit 4. The Attorney General testified that he was in Florida on December 11, 1969, the date shown on the extension memorandum and also the date of Judge Cabot's Extension Order. Mitchell further testified that it was part of his policy to have Lindenbaum communicate with him by telephone for oral authorization to place the Attorney General's initials on these memoranda (Tr. 78–79). Lindenbaum was supposed to act independently only when Mitchell was out of the country and unavailable. Lindenbaum's testimony revealed that he had exercised the Attorney General's power to initiate wiretap applications on occasions when Mitchell was in the country and also when he was in the Washington, D. C. area (Tr. 215–16, 237–38).

■ This Court has held that an authorization decision by Sol Lindenbaum is improper and violates the plain language of 18 U.S.C. § 2516, thereby tainting wiretap evidence procured as a result thereof.[3] The fact that Lindenbaum testified that he acted in the instant case under oral instructions by

---

1. United States v. Sklaroff, et al., 362 F. Supp. 478 (S.D.Fla.1973) (Order Suppressing Evidence Obtained by Electronic Surveillance)

2. *See Sklaroff, supra*, 362 F.Supp. at 484. See also United States v. Marder and United States v. Winer, 362 F.Supp. 484 (S.D.Fla.

1973) (Order Suppressing Evidence Obtained by Electronic Surveillance)

3. United States v. Robinson, 359 F.Supp. 52 (S.D.Fla.1973) (Findings of Fact and Conclusions of Law in re: Authorization of Wiretap Applications)

Mitchell after a long-distance telephone conference[4] with the Attorney General (Tr. 210, 214–15), could not serve to make proper an authorization any more than could a judge's oral instructions to the clerk of the court to sign his name to an Interception Order make that a valid order.

█ Even if the Attorney General had personally placed his initials on both memoranda, and even had the memoranda been presented to the Court at the time the Interception and Extension Orders were signed, the Court would still have been deceived because the false recitals in both documents, using the language of § 2516, point to Wilson as having made the authorization decision. We now know he had no such authority.

It is noted that whoever prepared the Wilson letter and other papers drew them to track the language of the statute. The letter represents to the judge that Mitchell had specially delegated to Wilson performance of the duty that the Act imposes, and that Wilson had performed it; the memorandum purports to make the delegation that the Act permits. I cannot describe as "good faith" or "substantial performance" an apparently deliberate attempt to mislead the Court.

It is with the greatest reluctance that I suppress the evidence in this and the other ten cases. The evidence of guilt derived from the wiretaps is overwhelming. A series of thorough and extensive investigations extending over a period of months are, in effect, wasted, and it is quite clear that neither U. S. Attorney Rust nor the officers in the field had any means of knowing that the applications were improperly authorized. They too, like the Court, were "had".

The blame for this waste of public resources, however, does not rest with this Court; it lies squarely in the Office of the Attorney General of the United States. For some reason unknown to this Court, the highest law enforcement officer in this country believed that he could ignore an express command of Congress. Needless to say, he cannot.

Concern for the evils of crime is increasing in this country with ample justification. In such times as this, however, it is especially important that the law not be bent or ignored in the name of expediency, especially by the highest law enforcement officer in the country. In a government of laws, the very existence of the government is imperiled if it fails to observe the laws scrupulously. When the Government becomes a lawbreaker it breeds contempt for laws. Against such pernicious conduct this Court resolutely sets its face.

---

4. Mitchell repeatedly testified that he had no specific recollection of the specific procedures that were followed in any of the cases which were the subjects of inquiry at the March hearing before the Court. He testified at length about his policies and the general procedures which he established and expected his subordinates to follow in all cases. Lindenbaum remembered speaking with Mitchell on December 11, 1969 but could not recall the contents of that conversation (Tr. 214–15). Both provided general accounts of the nature of such conversations.