**UNITED STATES of America**
v.
**Robert W. BEST et al.**
**Crim. A. No. 5640.**

United States District Court,
S. D. Georgia,
Augusta Division.
Aug. 8, 1973.

R. Jackson B. Smith, Jr., U. S. Atty., S. D. Ga., Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., for plaintiff.

William C. Calhoun, John H. Ruffin, Jr., Augusta, Ga., Terrell L. Glenn, Columbia, S. C., A. Blenn Taylor, James A. Bishop, Brunswick, Ga., Kenneth R. Chance, Augusta, Ga., for defendants.

## ORDER DENYING MOTIONS TO DISMISS AND SUPPRESS

ALAIMO, District Judge.

This is a criminal action based upon an indictment charging the defendants in two counts with the operation of an illegal gambling business. Count I charges substantive violations of 18 U. S.C. § 1955.[1] Count II is grounded in conspiracy and charges a concert of action for the purpose of violating 18 U. S.C. § 1955.

In an across-the-board attack, all defendants now move for dismissal of the indictment or, in the alternative, for suppression of the evidence derived from the interception of wire communications of various defendants.

Several issues raised by the briefs and argument of counsel are germane to both the motions to dismiss and the motions to suppress because they deal with evidence which, if seized illegally, would support suppression of the fruits of such seizure, used in part by the Government to obtain the indictments against the defendants. These issues will be discussed in that portion of this Order which is dispositive of the motions to suppress.

---

1. 18 U.S.C. § 1955 provides in pertinent part:

"(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period of thirty days or has a gross revenue of $2,000 in any single day."

**14**

## I.

### THE MOTIONS TO DISMISS

▉ Movants submit that Count II of the indictment must fail as being violative of "Wharton's Rule." [2] The averment, simply stated, is that Count I charges an offense which requires the participation of five or more persons, that conspiratorial action is therefore a necessary element of the substantive offense, and that the conspiracy allegations of Count II accordingly constitute a charge of conspiracy to conspire. In such a case, movants submit the conspiracy merges into the substantive offense and the proper remedy is dismissal of the conspiracy count as an additional offense. Chief reliance is placed by movants upon United States v. Figueredo, 350 F.Supp. 1031 (M.D.Fla.1972). There the district court dismissed conspiracy charges against eight defendants indicted under 18 U.S.C. § 1955 reasoning that "Wharton's Rule" mandates such a disposition because the statute incorporates concert of action as a necessary element of the offense. The better view, however, is expressed in United States v. Becker, 461 F.2d 230 (2 Cir. 1972), where the court found "Wharton's Rule" inapplicable to a charge of conspiracy to violate 18 U.S.C. § 1955 upon the rationale that the participation of a number of persons over and above the minimum number necessary to the commission of the offense removes the matter from the ambit of the merger doctrine. Judge Mansfield, speaking for a unanimous court, noted at page 234:

> "As we have recently reiterated, as long as the conspiratorial concert of action and substantive offense underlying it are not coterminous and fewer participants are required for the commission of the substantive offense than are named as joining in a conspiracy to commit it, there is no infirmity in the conspiracy indictment."

The Fifth Circuit has tacitly followed *Becker, supra,* by affirming convictions for conspiracy to violate 18 U.S.C. § 1955. *See* United States v. Thaggard, 477 F.2d 626 (5 Cir. 1973). Accordingly, this Court must reject the contention that "Wharton's Rule" precludes, as a matter of law, a charge of conspiracy to violate 18 U.S.C. § 1955. *Also see* United States v. Ianelli, 477 F.2d 999 (3 Cir. 1973).

▉ In an additional attack on the indictment, several movants challenge the sufficiency of the allegations upon the contention that the indictment charges several unrelated and separate conspiracies rather than a single or continuing conspiracy, thereby requiring movants to defend against allegations of unrelated offenses. Such a contention is unsupported and must fail upon a close scrutiny of the indictment. Here, the defendants are charged with the operation of and conspiracy to operate an illegal gambling business. The alleged conspiracy sought a common end and rested upon a single unified purpose. No extraneous matter constituting unrelated allegations is found. The indictment satisfies the test of United States v. Lloyd, 425 F.2d 711 (5 Cir. 1970) and fairly notifies the defendants of the charges against them.

▉ Movants further aver the converse; that is, that the indictment is duplicitous. As noted above, however, the Government has the burden of proving the additional element on Count II of participation of a number of persons in the business of illegal gambling over and above the minimum number necessary to make out a substantive offense under 18 U.S.C. § 1955. The necessity of this additional proof defeats any attack upon the indictment as being duplicitous.

Movants further argue that the use of aliases in the indictment is so prejudicial as to warrant dismissal. This contention, as a basis for dismissal, has been mooted by the Court's direction to counsel during the motions hearing held

---

2. See Anderson, 1 Wharton's Criminal Law & Procedure, Sec. 89, p. 191 (1957).

June 8, 1973, that the use of aliases relevant to disputed issues of identity will be permitted. *See e. g.,* United States v. Wilkerson, 456 F.2d 57 (6 Cir. 1972). Upon concession of counsel for various defendants that certain aliases properly identify the persons whose identity may be in issue, the Government is directed to strike all reference to such aliases from the pleadings and evidence. This procedure affords adequate safeguards against any prejudice which may arise from the irrelevant use of aliases. Thus, this contention must fail as a basis for dismissal of the indictment.

Next, the Court is asked to consider the facial constitutionality of Title III. Constitutional objection to the statute is posited upon the grounds that it permits unlawful invasion of privacy violative of the right to free speech under the First Amendment and the right to be free of unreasonable search and seizure under the Fourth Amendment. Specifically, Title III is challenged as permitting interception of wire communications which have not been particularly described in the interception order. Further constitutional infirmity is grounded on the contention that Title III allegedly permits secret search in violation of the Fourth Amendment because it does not command prompt post-search notice; it permits the seizure of testimonial evidence in violation of the Fourth and Fifth Amendments; and the 30-day search authorized thereby is durationally overbroad in violation of the Fourth Amendment.

A legion of cases met these challenges and Title III has successfully run the gauntlet of constitutional attack.[3] A diligent search reveals only one instance in which a federal court found Title III to be constitutionally impermissible. In United States v. Whitaker, 343 F.Supp. 358 (E.D.Pa.1972), the Court found Title III to be violative of the Fourth Amendment in three particulars. The Court first found that the 30-day durational provision of Title III violated the Fourth Amendment requirement that intrusions be "precise," "carefully circumscribed," and "very limited" citing Katz v. United States, *supra*, and Berger v. New York, *supra*. Secondly, the Court saw a violation of the particularity requirement of the Fourth Amendment in the statute's delegation of discretion to executing officers to determine the termination point of interceptions in some instances. Thirdly, the Court found that the statute's failure to provide for prompt post-search notice violates the constitutional stricture on secret searches.

*Whitaker* has been expressly reversed by the Third Circuit on February 27,

---

3. *See, e. g.,* United States v. Cox, 449 F.2d 679 (10 Cir. 1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972) (Title III does not authorize general searches and comports with the requirements of Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); Katz v. United States, 389 U.S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967), and Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966)); United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972); aff'd. sub nom., United States v. Giordano, 469 F.2d 522 (4 Cir. 1972) (Title III does not violate Fourth Amendment); United States v. LaGorga, 336 F.Supp. 190 (W.D. Pa.1971) (Title III does not violate the right to privacy); United States v. King, 335 F.Supp. 523 (S.D.Cal.1971) (Title III meet specificity and particularity requirements of Fourth Amendment); United States v. Lawson, 334 F.Supp. 612 (E.D. Pa.1971) (Title III sufficiently circumscribed to comply with Fourth Amendment); United States v. Becker, 334 F. Supp. 546 (S.D.N.Y.1971) (Title III complies with First, Fourth, and Fifth Amendments); United States v. Perillo, 333 F. Supp. 914 (D.Del.1971) (30-day provision of Title III not durationally overbroad); United States v. Leta, 332 F.Supp. 1357 (M.D.Pa.1971) (Title III satisfies particularity requirement of Fourth Amendment); United States v. Cantor, 328 F.Supp. 561 (E.D.Pa.1971), aff'd, 470 F.2d 890 (3 Cir. 1972) (Title III sufficiently circumscribes to satisfy Fourth Amendment); United States v. Sklaroff, 323 F.Supp. 296 (S.C. Fla.1971) (Title III does not violate right to privacy); United States v. Escandar, 319 F.Supp. 295 (S.D.Fla.1970), rev'd. on other grounds; United States v. Robinson, 468 F. 2d 189 (5 Cir. 1972) (Title III not violative of free speech rights of First, particularity under Fourth, or freedom from testimonial evidence under Fifth Amendment).

16

1973, certiorari denied, 412 U.S. 953, 93 S.Ct. 3003, 37 L.Ed.2d 1006. In United States v. Cafero, 473 F.2d 489 (3 Cir. 1973), the court, after criticizing *Whitaker*, noted at page 501:

> "For these reasons, we reject the holding of United States v. Whitaker that Title III is unconstitutional, and thereby place ourselves in agreement with courts of appeals and district courts which have adjudicated the constitutionality of Title III."

The Court rejected the *Whitaker* rationale that the 30-day durational provision is overbroad by noting that such provision limits the interception to a *maximum* of 30 days. The Court noted the further limitation upon duration in that 18 U.S.C. § 2518(4)(e) requires termination upon attainment of the objective sought. Furthermore, the Court took cognizance of the right of *sua sponte* judicial review at any time. These provisions bring the statute within the constitutional mandate of Berger v. New York, *supra*. As to the *Whitaker* objection to the discretion vested in the executing officers, the Court reiterated that the statute requires automatic termination upon attainment of the objective sought and noted the particularity requirements [4] in concluding that the discretion of the executing officers is sufficiently circumscribed to satisfy the Fourth Amendment. Finally, the Court rejected the *Whitaker* conclusion that Title III is rendered unconstitutional by its failure to provide for post-search notice by pointing to the provision for the filing of inventories and the accessibility to such inventories by aggrieved persons such "as the judge determines to be in the interest of justice." 18 U.S.C. § 2518(8)(d). The Court found this entrustment of inspection to judicial process to be inoffensive to the Fourth Amendment.

■ This Court is compelled to hold, upon a careful consideration of Title III and the overwhelming precedents recognizing its constitutionality, that the statute does not violate the First, Fourth, or Fifth Amendments to the United States Constitution.

## II.

### THE MOTIONS TO SUPPRESS

The threshold inquiry on the motion to suppress concerns standing. Although the Government concedes standing on the part of some defendants to move for suppression of the contents of the intercepted wire communications, a challenge is issued to the standing of the defendants Nicholson and Ward upon the contention that these persons are not "aggrieved" within the meaning of Title III of the Omnibus Crime Control and Safe Street Acts of 1968, Title 18, United States Code, Section 2510 et seq., [hereinafter referred to as Title III]. Chief reliance is placed by the Government upon Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). There the Court had occasion to state at pages 171–172, 89 S.Ct. at page 965:

> "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing."

The Court then noted, by way of *dicta*, that the constitutionally permissible scope of standing could be broadened by legislation, but took cognizance of the then infant Title III with the suggestion that the legislative history thereof directed that standing be accorded "aggrieved persons" only within the scope of existent standing rules.

■ Reliance upon *Alderman* is misplaced for the reason that no expansion of existent standing rules is here necessary to accord the defendants Nicholson and Ward "aggrieved person" status.

4. See 18 U.S.C. §§ 2516, 2518(3)(a), 2518(4)(c), 2518(4)(e).

18 U.S.C. § 2510(11) defines "aggrieved person" as meaning "a person who was a *party to any intercepted wire or oral communication* or a person against whom the interception was directed." (Emphasis added). The record *sub judice* indicates that both of the persons in question were parties to the intercepted wire communications.[5] As such, these defendants are accorded statutory standing to invoke the suppression sanction of 18 U.S.C. § 2515 pursuant to 18 U.S.C. § 2518(10)(a). The legislative history, relied upon by the Court in Alderman, does not deny standing to parties in the position of these defendants. See 1968 U.S.Code Cong. and Admin.News 2179–80:

Movants object to the use of devices known as "pen registers"[6] by Government agents upon the ground that no attempt was made in connection with such use to comply with the provisions of Title III to obtain authorization therefor. The Government counters with the suggestion that pen registers (because such devices simply trace phone calls and do not record the contents of such calls) fall without the ambit of Title III.

█ The purpose of Title III in part is "to define on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized . . . ." 1968 U.S.Code Cong. and Admin.News 253, § (b). Thus, the pertinent inquiry here may be fairly stated as being whether the use of pen registers constitutes an "interception" as that term is defined for purposes of Title III. *See* 18 U.S.C. § 2510(4) where the term "interception" is said to mean "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." This statutory definition, making reference to the contents of a wire communication, appears to exclude from the scope of Title III the use of a device which records only numbers. This inescapable conclusion must be adopted as being consistent with the explicit Congressional intent as stated at 1968 U.S.Code Cong. and Admin.News 2178, § (4):

"The proposed legislation is not designed to prevent the tracing of phone calls. The use of a 'pen register,' for example, would be permissible. *But see* United States v. Dote, 371 F.2d 176 (7 Cir. 1966). The proposed legislation is intended to protect the privacy of the communication itself and not the means of communication."

*Accord* United States v. King, 335 F. Supp. 523 (S.D.Cal.1971); United States v. Escandar, 319 F.Supp. 295 (S. D.Fla.1970); *Cf.* United States v. Lanza, 341 F.Supp. 405 (M.D.Fla.1972).

█ Furthermore, the Court concludes, upon a careful scrutiny of the affidavits supporting issuance of the respective court orders authorizing the use of pen registers, that probable cause comporting with Fourth Amendment standards was presented the issuing judge in each instance. At the very

---

5. Inventories filed by United States Attorney R. Jackson B. Smith, Jr., on May 7, 1973, and served upon the subject defendants pursuant to 18 U.S.C. § 2518(8)(d) represented in part that, "included in such intercepted communications were one or more wire communications to which you were a party."

6. The Court in United States v. Caplan, 255 F.Supp. 805, 807 (E.D.Mich.1966) described the pen register as follows:

"The pen register is a device attached to a given telephone line usually at a central telephone office. A pulsation of the dial on the line to which the pen register is attached records on a paper tape dashes equal in number to the number dialed. The paper tape then becomes a permanent and complete record of outgoing numbers called on the particular line. With reference to incoming calls, the pen register records only a dash for each ring of the telephone but does not identify the number from which the incoming call originated. The pen register cuts off after the number is dialed on outgoing calls and after the ringing is concluded on incoming calls without determining whether the call is completed or the receiver is answered. There is neither recording nor monitoring of the conversation."

least, each showing included allegations of: (a) information provided by informant(s) that certain illegal gambling operations were being conducted through the use of various telephones to which the orders were directed, (b) reliability of informant(s) based upon a history of furnishing positive valuable information, and (c) the existence of underlying circumstances upon which the informant(s) could base the conclusions as well as corroboration through independent investigation and sources. In view of those factors, no constitutional infirmity requires suppression of the evidence derived from the use of these devices.

Movants further attack the admissibility of the evidence derived from the interception of wire communications upon the ground that the orders authorizing said interceptions were issued without an adequate showing of probable cause.[7] Specifically, the Government's attempt to show probable cause through the affidavit(s) of FBI Special Agent Edward Collins is challenged as insufficient under Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) upon the averment that said affidavit(s) fail to state facts in support of the conclusion that the informant(s) was reliable or that the informant's conclusions were supported by underlying circumstances. Reliance upon subpoenaed telephone company records is challenged as unwarranted for the reason that no authority exists for issuance of a subpoena for such records. Finally, the information, going toward the showing of prob-

able cause, which had been obtained through the use of pen registers is discounted by movants as having been obtained in violation of the Fourth Amendment and Title III.

■ Addressing the initial contention submitted by movants in this regard, the Court is compelled to find that the information supplied the affiant by informants satisfies constitutional standards requisite to a showing of probable cause under Spinelli v. United States, supra, and Aguiler v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Facts in support of the informants' reliability were presented the issuing judge, viz., three of the informants had on numerous occasions provided the FBI with information which resulted in the arrest and/or conviction of several persons including in at least one instance a conviction(s) for violation of gambling laws. Furthermore, various personal observations by informants as well as admissions made to them by some defendants constituted sufficient underlying circumstances upon which the conclusions of informants that an illegal gambling business was being conducted could be based. These factors satisfy the test for finding of probable cause based upon information supplied by confidential informants. See e. g., United States v. Escandar, 319 F.Supp. 295 (S.D.Fla.1970); United States v. Leta, 332 F.Supp. 1357 (M.D.Pa.1971). Moreover, additional corroborating information was provided the issuing judges. This information arose from the FBI investigation and included prior arrest

---

7. 18 U.S.C. § 2518(3) provides:

"Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that

offense will be obtained through that interception;

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communication are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person."

records[8] of some defendants for gambling violations, public and private telephone company records, a pattern of phone use recorded by pen registers suggestive of a numbers operation, and a pattern of activity of some defendants observed by FBI agents through surveillance of these individuals corroborative of other allegations suggesting the existence of an illegal gambling operation conducted by various defendants.

Finally, movants' denial that the Government has the authority for the issuance of subpoenas for telephone company records is totally meritless. *See e. g.*, DiPiazza v. United States, 415 F.2d 99 (6 Cir. 1969); United States v. King, 335 F.Supp. 523 (S.D.Cal.1971); United States v. Russo, 250 F.Supp. 55 (E.D.Pa.1966); *Cf.*, United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972). Similarly, the challenge to the information obtained through the use of pen registers as probative on the probable cause inquiry is rejected. As noted in the discussion of such devices above, information obtained by the use of the register is not subject to suppression. *A fortiori*, such information may be considered as a factor in the determination of whether probable cause exists for issuance of an interception order.

The defendants next complain of, and premise the dismissal and suppression motions upon, the disclosure of the contents of intercepted wire communications to the grand jury without first causing service upon the defendants of the application for, and the court order authorizing the interceptions. The contention is made that 18 U.S.C. § 2518 (9)[9] requires such service as a requisite to disclosure of such communications to a grand jury in order to afford aggrieved persons an opportunity to move for suppression to protect themselves from any unlawful invasion of privacy. The issue here, as framed by the Government's response to this contention, specifically addresses itself to the proper construction of the term "proceeding" as used in 18 U.S.C. § 2518(9). The movants read this term as inclusive of grand jury proceedings. The Government conversely would exclude grand jury proceedings from the ambit of the term as used in 18 U.S.C. § 2518(9) upon the contention that the statute refers only to adversary proceedings. This latter view must prevail upon a reading of the explicit congressional intent found at 1968 U.S.Code Cong. and Admin.News 2195:

> " 'Proceeding' is intended to include all adversary type hearings. It would include a trial itself, a probation revocation proceeding, or a hearing on a motion for reduction of sentence. *It would not include a grand jury hearing.*" (Emphasis added).

*Accord* United States v. Friedland, 444 F.2d 710 (1 Cir. 1971). Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972) cannot alter this conclusion. There, the Court was concerned with 18 U.S.C. § 2515[10] and

---

8. The Court is cognizant of the defense contention that some of the arrest and/or conviction records were improvidently considered because of staleness. Assuming *arguendo* the validity of this averment, it would not alter the result reached here. Such error, if any, would be harmless because these records were not indispensable to the probable cause determination in view of the totality of circumstances.

9. 18 U.S.C. § 2518(9) provides:
   "The contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information."

10. 18 U.S.C. § 2515 provides:
    "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evi-

its applicability by way of defense to a contempt citation of a grand jury witness who had refused to answer questions upon the grounds that the questions were derived from illegal wire interceptions. Specifically, the issue was there defined by the Court as "whether grand jury witnesses, in proceedings under 28 U.S.C. § 1826(a),[11] are entitled to invoke this prohibition of § 2515 as a defense to contempt charges brought against them for refusing to testify." That question was answered affirmatively but with clear implication that grand jury witnesses had no standing to move to suppress illegally obtained wire communications before disclosure of such evidence to a grand jury. The Court noted at pages 60–61, 92 S.Ct. at page 2367:

"The asserted omission of grand jury proceedings from § 2518(10)(a) may well reflect congressional acceptance of that procedure as adequate in these cases. Consequently, we cannot suppose that Congress, by providing procedures for suppression motions, intended to deprive grand jury witnesses of the § 2515 defense that would otherwise be available to them. Although the Government points to statements in the Senate report to the effect that § 2518(10)(a) 'limits' § 2515, we read those statements to mean that suppression motions, as a method of enforcing the prohibition of § 2515, must be made in accordance with the restrictions upon forums, procedures, and grounds specified in § 2518(10)(a)."

Further evidence of the Court's inclination in *Gelbard* to deny the pre-indictment suppression remedy to grand jury witnesses is found at pages 59–60, 92 S. Ct. at page 2367:

"The congressional concern with the applicability of § 2518(10)(a)[12] in grand jury proceedings, so far as it is discernible from the Senate report, was apparently that defendants and potential defendants might be able to utilize suppression motions to impede the issuance of indictments: 'Normally there is no limitation on the character of evidence that may be presented to a grand jury, which is enforcible by an individual. [United States v. Blue, 384 U.S. 251 [86 S.Ct. 1416, 16 L.Ed.2d 510] (1966)]. There is no intent to change this general rule.' S.Rep.No.1097, 90th Cong., 2d Sess., 106 (1968). The 'general rule,' as illustrated in *Blue*, is that a defendant is not entitled to have his indictment dismissed before trial simply because the Government 'acquire[d] incriminating evidence in violation of the [law],' even if the 'tainted evidence was presented to the grand jury.'" (Citations omitted).

Furthermore:

"Because no person is a party as such to a grand jury proceeding, the provision does not envision the mak-

---

dence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

11. 28 U.S.C. § 1826(a) provides in pertinent part:
"Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other in-

formation, . . . the court, upon such refusal, . . . may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information."

12. 18 U.S.C. § 2518(10)(a) grants the suppression remedy. It provides in pertinent part:
"Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom. . . . . "

ing of a motion to suppress in the context of such a proceeding itself . . . . It is the intent of the provision only that when a motion to suppress is granted in another context, its scope may include use in a future grand jury proceeding."

*Gelbard,* n. 20 at p. 59, 92 S.Ct. at p. 2367 citing S.Rep.No.1097, 90th Cong., 2d Sess. 106 (1968).

The First Circuit in Cali v. United States, 464 F.2d 475 (1 Cir. 1972), specifically denied the suppression remedy to a grand jury witness explaining the underlying policy for its decision as follows at p. 479:

"This result strikes a balance between the requirements of the federal wiretap statute and the efficient functioning of the grand jury. It allows the grand jury to proceed, uninterrupted by lengthy suppression hearings unless and until the power to compel testimony is invoked. The aggrieved grand jury witness is not left without remedies for the unlawful interception. While remedies other than suppression may be less efficacious in protecting individual rights, it must be remembered that the Omnibus Act provides greater protection than previously existed."

This language and *Gelbard* support this Court's holding in the case at Bar and refute any assertion that the movants should have been served under § 2518(9) so as to afford them notice which would have enabled them to move for suppression prior to presentment to the grand jury of evidence derived from the interception of wire communications under Title III. The absence of a pre-indictment suppression remedy for potential defendants and the legislative history of §§ 2515, 2518(9), and 2518(10)(a) combine to justify this Court's holding that the Government has no duty of service pursuant to § 2518(9) prior to presentment of the challenged evidence to a grand jury inasmuch as grand juries fall without the ambit of that section.

Further averments by movants concern alleged disclosures of the contents of intercepted communications in violation of 18 U.S.C. §§ 2517, 2518. These allegations are conclusory and must fail for want of a factual foundation.

Movants vigorously challenge the procedure utilized by the Justice Department in its attempt to satisfy the authorization requirements of 18 U.S.C. § 2516.[13] In this connection, movants were afforded an opportunity to present evidence during hearings on the motions to suppress on June 8, 1973, and on July 13, 1973. Various affidavits and other interrelated documents were filed by the Government which purported to illustrate the procedure utilized to obtain the authorization. On the basis of all of the evidence submitted on this issue, the Court finds the procedure sufficient to comport with the requirements of § 2516.

Requests[14] for authorizations for two interception orders issued in connection with the investigation of the offenses upon which the defendants have been indicted were presented the Justice Department by the Acting Director of the Federal Bureau of Investigation. Thereafter, the affidavits purporting to show probable cause for issuance of the

13. 18 U.S.C. § 2516 provides in pertinent part:

"(1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communica-

tions by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made. . . . . ."

14. Since the authorization procedures for both orders issued in this matter were substantially identical, it is unnecessary to treat the two authorizations separately.

authorizations, the proposed applications for court orders, and the proposed court orders were examined by attorneys in the Organized Crime and Racketeering Section of the Criminal Division. The documents were found there to be sufficient to support a recommendation that the Attorney General authorized the applications. These recommendations were then adopted by the Assistant Attorney General in charge of the Criminal Division and forwarded to the Attorney General's office for his consideration. In each instance the Attorney General, in fact, approved the recommendation and authorized the application to a judge for the interception orders. These authorizations were given orally by telephonic communication to his Executive Assistant who signed the Attorney General's name to memoranda of authorization with an appropriate explanation as to the form of authorization. Notice that the Attorney General had authorized the applications was then forwarded to the United States Attorney's office and the interception orders were obtained.

▄▄▄ The trust of the movants' argument is the contention that the Executive Assistant to the Attorney General actually authorized the application in contravention of § 2516 as construed in United States v. Robinson, 468 F.2d 189 (5 Cir. 1972). The procedure condemned in *Robinson* entailed action of the Executive Assistant to the Attorney General which "approved actions designating Will Wilson to authorize" the application and the subsequent automatic action of the deputy of the purported designee notifying the United States Attorney to apply for the court order. Of course, the procedure under scrutiny here is factually distinguishable from *Robinson* in that the authorization here, in fact, emanated directly from the Attorney General.[15] There is no issue at bar concerning either designation of an Assistant Attorney General to authorize the application or misidentification of the authorizing officer in the applica-

tions and orders. The only *issue raised by* the movants which demands disposition by this Court is whether a § 2516 authorization occurs when the Attorney General orally instructs his Executive Assistant to place his signature on a memorandum of authorization after being advised of the contents of supporting affidavits.

The movants rely heavily upon the district court decision in United States v. Laff, 365 F.Supp. 737, No. 70–450–Cr–PF (S.D.Fla. May 31, 1973), wherein evidence derived from a court ordered wiretap was suppressed upon the grounds that § 2516 had been violated. That decision turned specifically upon the "specially designated" language of § 2516 with the suppression grounded upon the misrepresentation to the issuing judge that Will Wilson, former Assistant Attorney General in charge of the Criminal Division, had been specially designated to authorize the application when, in fact, no such designation had ever occurred. As previously noted, there is no designation issue now presented this Court for determination. On the contrary, the record here clearly indicates that the Attorney General, himself, authorized the applications. It is true that Judge Mehrtens, by way of *dicta* in *Laff*, suggests that oral authorizations by the Attorney General would fail to satisfy § 2516. That suggestion, however, was not necessary to the decision and is not accepted by this Court as reflective of the proper construction of that section. Nor is United States v. Stanley, 360 F.Supp. 1112 (N.D.Ga. 1973), persuasive on the inquiry here. The issue there was misidentification; the interrelated documents having identified the Acting Assistant Attorney General as the authorizing officer when the Attorney General had, in fact, authorized the application. Here, the Attorney General was correctly identified as the authorizing officer.

▄▄▄ A myriad of factual situations could arise from authorization proce-

---

15. See affidavits of Richard Kleindienst and Sol Lindenbaum.

dures within the Justice Department. Several variations have been utilized giving rise to numerous issues in many prosecutions. The result has been a wide divergence of opinion among the courts as to the standard which the Congress sought to impose upon the Justice Department.[16] In the final analysis, this Court's function is simply to determine whether the procedure utilized here is in literal compliance with § 2516. This inquiry must be answered affirmatively. Where the Attorney General in fact authorizes the application, § 2516 is complied with unless the identity of authorizing officer is misrepresented to the issuing Judge. To require the Attorney General to exercise the mechanical act of affixing his signature to a memorandum of authorization would be to elevate form over substance and impose a greater duty upon him than the strict duty of personal attention under United States v. Robinson, *supra*. Section 2516 requires only that the Attorney General or his special designee, in fact, authorize the application. The manifestation of that authorization, so long as not misleading, may take any expedient form designed to show the issuing judge that the application received the personal attention of an officer qualified under § 2516 to perform that function.

Nothing in the deposition of Richard Kleindienst persuades the Court to alter its findings and conclusions on this issue.

For the foregoing reasons, this Court rejects movants' assertions that the Indictment must be dismissed or in the alternative that the evidence derived from the interception of wire communications must be suppressed. Accordingly, it is considered, ordered, and adjudged that all motions herein for dismissal and for suppression are denied.

16. See e. g., United States v. Chavez, 478 F.2d 512 (9 Cir. Feb. 28, 1973) (authorization by Executive Assistant insufficient); United States v. Giordano, 469 F.2d 522 (4 Cir. 1972) (authorization by Executive Assistant insufficient); United States v. Beck-er, 461 F.2d 230 (2 Cir. 1972) (authorization by Executive Assistant sufficient); United States v. Cox, 462 F.2d 1293 (8 Cir. 1972) (misidentification not fatal); United States v. Pisacano, 459 F.2d 259 (2 Cir. 1972) (misidentification not fatal).